FRANCES E. JUNE *vs.* BOSTON AND ALBANY RAILROAD
COMPANY.

Suffolk.    November 14, 1890. — January 10, 1891.

Present: FIELD, C. J., W. ALLEN, HOLMES, & MORTON, JJ.

*Railroad — " Passenger " — Licensee — Negligence.*

A person, walking towards a railroad station with the intention of buying a ticket
and taking a train after he gets there, is not a passenger before he reaches the
station, even if he might be one in the same place if he had begun his journey.

Railroad car shops stretched along the tracks nearly opposite a station.    The
nearest shop was connected therewith by a plank walk at grade, for the use of
employees in wheeling supplies; the most remote opened both upon a street
and upon the tracks.    Near the end of this walk, at the shop, was posted a warn-
ing against trespassing.    A salesman, who without invitation had visited the
remote building to sell an article there used, started thence along the tracks
towards the station to take a train.    The engineer of an approaching express
train, running at the rate of thirty-five to forty miles an hour, first saw him
between the rails facing the train within three hundred feet, and sounded the
whistle, but did not put on the air brakes until within twenty-five feet of him.
*Held*, in an action under the Pub. Sts. c. 112, § 212, for causing his death, that
at most he was no more than a licensee; and that the defendant or its servants
were not guilty of negligence towards him.

TORT, under the Pub. Sts. c. 112, § 212, by the administra-
trix of the estate of Charles K. June, for causing his death.    At
the trial in the Superior Court, before *Thompson*, J., there was
evidence tending to prove the following facts.

The intestate was run over and killed, on November 17, 1887,
by an express passenger train on the defendant's railroad, near
its station in Allston.    This station is situated on the south side
of the railroad, which at this point runs from east to west and
consists of four main tracks and a side track.    The most north-
erly main track was used for west-bound trains, and the track
next south for east-bound trains.    About three hundred and fifty
feet west of the station and on the north side of the tracks,
stretching along the railroad for the distance of a thousand feet,
were situated the defendant's car shops for the building and
repairing of its cars, the most easterly being the freight car shop
so called, and the most westerly the paint shop.    The westerly
end of the paint shop was situated on a public street running

north and south, and crossing the railroad at grade. Doors in this end of the paint shop led directly therefrom through a gate to the street, and another door upon the south side of the building opened directly upon the defendant's yard and tracks. The side track above mentioned was the most northerly of all the tracks, and extended the entire length of the car shops. The station platform extended one hundred and fifty feet west of the station, and from the end of the platform a plank walk four feet wide continued in the same direction at a lower level for about two hundred feet along the south side of the tracks, to a point opposite the east end of the freight car shop, then turned and crossed first the main tracks and then the side track at a level, and ended at a door leading into the shop. Inside of this door was a flight of steps, at the foot of which was a sign, " Office upstairs," leading to the office of the master car builder in charge of the shops. This walk was intended for the use of the defendant's employees in wheeling supplies between the station and the shops. Directly opposite the station, on the north side of and parallel to the four main tracks at a distance of four feet from the most northerly of these, stood a board fence about six feet high, which extended westerly to a point near the plank walk above mentioned, and then turned at a right angle and extended in the same direction as the walk across the side track towards the freight car shop. At this point the side track, after crossing the plank walk, passed through a gate in the fence into the car shops yard. Over this gate, and in plain sight of any one using the walk, was the following : " Notice. All persons found trespassing on these premises are liable to arrest, and will be prosecuted according to law." The master car builder purchased all supplies used in the shops, including paints. The intestate, who was a manufacturer and seller of paints, came without invitation to the paint shop at about a quarter past four on the afternoon of the day of the accident, and sought to sell some paints to the foreman in charge of the shop. After a short conversation with him, the intestate said that he wished to take the next train to Boston, and inquired when it would start. Upon being told that a train would go at about ten minutes of five, the intestate left the shop by the south door opening upon the tracks, and walked along between the car shops and the side track to-

wards the station.   When he reached the plank walk, an east-bound freight train was passing along on the second main track from him and covered the crossing.   He walked beyond the plank walk, and upon reaching the angle of the fence turned to the right and passed out upon the northerly main track.   At this time a west-bound express train then due was approaching the station running at the rate of from thirty-five to forty miles an hour, its speed constantly increasing.   The engineer of this train first saw the intestate when within three hundred feet of him, as he came around the corner of the fence and stood facing the train between the rails, and thereupon began to sound the whistle sharply, but did not put on the air brakes until within twenty-five feet of him.   At the sound of the whistle the intestate looked up towards the approaching train and started towards the freight train which was still passing, then turned towards the fence, then again towards the freight train, then back again towards the fence, by which time the engine struck him.   To one walking along, as did the intestate, between the car shops and the tracks, a west-bound train approaching on the most northerly main track would be more or less obscured by the projecting angle of the fence, according as he walked along near the buildings or that track.   There was no flagman, nor were there sign-boards or gates, at the place where the plank walk crossed the tracks.

At the close of the evidence, the judge ruled, (1) that there was no evidence that the intestate at the time he was killed was a passenger; (2) that there was no evidence of any unfitness, gross negligence, or carelessness on the part of the defendant's servants or agents; (3) and that there was no evidence on which the jury could find that the deceased was in the exercise of due diligence.   The judge thereupon ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*E. W. Hutchins & H. Wheeler*, for the plaintiff.

*Samuel Hoar*, for the defendant.

HOLMES, J.   The plaintiff's intestate was not a passenger. We do not think argument necessary to show that a man walking toward a railroad station with the intention of buying a ticket and taking a train after he gets there, is not a passenger before he reaches the station, even if he might be one in the

same place if he had begun his journey.   *Dodge* v. *Boston &
Bangor Steamship Co.* 148 Mass. 207.

There was no evidence of negligence on the part of the corpo-
ration, or of unfitness or gross negligence of its servants.   Pub.
Sts. c. 112, § 212.   See *Commonwealth* v. *Boston & Maine Rail-
road,* 133 Mass. 383.   The place at which the intestate was killed
was not a highway, town way, or travelled place, within the Pub.
Sts. c. 112, §§ 163–165.   No reason for special precautions was
shown, except that a plank walk four feet wide crossed the track,
and ended in the door of a private building, with a warning
against trespassing hard by.   The public was not invited to use
this walk as a crossing, and the defendant was not bound to
expect them there.   *Donnelly* v. *Boston & Maine Railroad,* 151
Mass. 210.   The plaintiff's intestate was not invited there.   He
was not going to or coming from the building in which the walk
ended, but had come from a more distant building along the side
of the track, instead of going by the road on which the latter
building opened.   It would seem that he was not even on the
walk, but between the rails facing the train which killed him.
At most he was no more than a licensee.   As towards him, there
was no negligence on the part of the defendant or its servants in
not providing a sign-board, gate, or flagman, and there was no
duty to whistle, although in fact the engine was whistling.   The
defendant had a right, as against him, to run its trains upon its
tracks at such speed as it found convenient, and it was for the
deceased to take care that he was not hurt by their doing so.
There may be cases in which even unintended damage done to a
licensee, by actively bringing force to bear upon his person, will
stand differently from merely passively leaving land in a danger-
ous condition.   But something more must be shown than that
trains are run in the usual way upon a railroad, where the place
does not of itself give warning of his probable presence, and when
he is not seen until it is too late.   See *Metcalfe* v. *Cunard Steam-
ship Co.* 147 Mass. 66 ; *Batchelor* v. *Fortescue,* 11 Q. B. D. 474.
There is a plain difference between this case and cases like *Byrne*
v. *New York Central & Hudson River Railroad,* 104 N. Y. 362, and
*Taylor* v. *Delaware & Hudson Canal,* 113 Penn. St. 162, where the
crossings were habitually used by the public, and where there
was evidence of a failure to ring the bell or sound the whistle,

the only precaution of which it occurs to us that there could have been any question here.   See *Stubley* v. *London & North Western Railway*, L. R. 1 Ex. 13, 17 ; *Dublin, Wicklow, & Wexford Railway* v. *Slattery*, 3 App. Cas. 1155, 1163.

The deceased was first seen when the train was within less than three hundred feet, and running at from thirty-five to forty miles an hour.   The engineer at once began to blow short whistles.   It cannot be called gross negligence, if negligence at all, that he did not at once put on the brakes.   His natural expectation was that the deceased would get off the track, rather than lose his head.

In view of what we have said, it is unnecessary to consider whether there was any evidence of due care on the part of the plaintiff's intestate, or whether the evidence did not rather prove its absence.                           *Exceptions overruled.*