AGNES WHITNEY *vs.* THE NEW YORK, NEW HAVEN
AND HARTFORD RAILROAD COMPANY.

Second Judicial District, Norwich, October Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Actionable negligence involves the proof of a violation by the defendant
   of some legal obligation or duty which he owes to the plaintiff.
One who seeks to recover damages for personal injuries received while
   on the tracks of a railroad, which are alleged to have been caused
   by the negligence of the company in the operation of its trains,
   must show by a preponderance of evidence that he was rightfully
   on the tracks.
The fact that such a plaintiff was injured upon a private crossing which
   the railroad company maintained for the use and benefit of a coal
   and lumber company and its customers and patrons, is of no avail
   to the plaintiff, if she was there, as in the present case, solely for her
   own convenience in securing a short cut into town.
A railroad company does not invite the public to cross its tracks at a
   given point merely by planking a private crossing at such point,
   nor because of its maintenance of such crossing is the company
   bound to anticipate the presence of trespassers thereon.
It is a general rule that a railroad company owes no duty to a person
   who is unlawfully upon its tracks, when he is not seen until it is too
   late to avoid injury.
There is a marked distinction between the duty which one owes to those
   who come upon his premises by his invitation, express or implied,
   and those who come as bare volunteers or licensees; the latter as-
   sume the risk of injury so long as there is no active misconduct to-
   ward them on the part of the owner or occupant of the premises.
Questions of negligence and contributory negligence are ordinarily ques-
   tions of fact for the jury; but the undisputed evidence as to one
   of the controlling issues may be so conclusive, as in the present case,
   that the question becomes one of law.

Argued October 22d, 1913—decided January 15th, 1914.

ACTION to recover damages for personal injuries al-
leged to have been caused by the defendant's negligence,
brought to the Superior Court in New London County
and tried to the jury before *Curtis, J.;* verdict and

judgment for the plaintiff for $8,500, and appeal by the defendant. *Error and new trial ordered.*

The plaintiff's alleged cause of action is based upon the claim that when she was injured she was rightfully upon the tracks of the defendant company. The negligence alleged was the failure to provide a flagman, gates, or other proper means to warn the plaintiff of approaching trains; an excessive rate of speed; a failure to keep a proper lookout by the engineer; and neglect to sound the whistle and ring the bell upon the engine.

The evidence before us, including photographs and maps, shows these facts: On February 1st, 1909, the plaintiff was injured by being struck by the engine of a passenger-train while upon the railroad tracks of the defendant company in the westerly part of the city of New London. The accident occurred at a grade-crossing known as the "Lumber Yard Crossing," which leads from the land and wharves of the Chappell Company on the east side of the railroad company's tracks to the land and office of the Chappell Company and Bank Street on the westerly side of the railroad.

The land now owned by the Chappell Company, prior to the construction of the railroad, was owned by John W. and Benjamin F. Brown, and comprised a piece of land fronting on the Thames River and Bank Street. On the river front was a wharf and docks, and between the wharf and Bank Street there was about an acre and a half of land used by the Browns in carrying on a coal and wharfage business. In June, 1851, the Browns conveyed, for railroad purposes, to the New Haven and New London Railroad Company, a strip of this land twenty-five feet wide, running through this property and separating the wharf from the land lying westerly of the strip conveyed, and rendering it inaccessible except by crossing the strip of land transferred to the railroad company. This land was con-

veyed by a warranty deed, which provided, among other things, that it should be used for the purposes of a railroad, "and for no other use and purpose whatever." It further provided as follows: "And we reserve to ourselves the privilege of crossing, and recrossing the said piece of land above described or any part thereof within said bounds." The defendant is the successor of the grantee in this deed, and entitled to all the rights under the same which the grantee had thereunder. The Chappell Company now owns the premises formerly owned by the Browns, and is entitled to all the rights in the strip conveyed which attached to this land belonging to the Browns. The right of crossing mentioned in the deed was not definitely located in this conveyance, but the Chappell Company adopted and used three crossings at grade; the westerly one being known as the "Soft Coal Crossing," the middle crossing being known as the "Lumber Yard Crossing," and the third and easterly one being known as the "Hard Coal Crossing."

The railroad runs through the Chappell land on a sharp curve bearing toward the harbor. The railroad tracks at this point run substantially east and west. On the harbor side of the tracks at the Lumber Yard Crossing there is a picket fence about six feet six inches in height, and about five feet distant from the nearest rail. On the Bank Street side of the tracks the distance from the nearest rail to the fence varies from sixteen feet at Sparyard Street to six feet at the Lumber Yard Crossing. On the north side of the railroad and at a point forty-four feet easterly from Sparyard Street, there was a warning signal which had been maintained for a long time and which was in plain view from the footbridge and from points easterly of the footbridge. This sign was set upon a post about five feet high, with the following words in plain, large letters: "Trespassing

on the tracks forbidden. N. Y., N. H. & H. R. Co.";
and on the reverse side the words: "All persons are
forbidden walking on the tracks and grounds of this
company. N. Y., N. H. & H. R. Co."

Regular trains were passing through the property of
the Chappell Company at least every hour, and at cer-
tain periods in the day there were also switches of
freight-cars every twenty to thirty minutes from the
different yards of the railroad company, which yards
were located on both sides of the Chappell land.

For many years, in the use of its premises, the Chap-
pell Company had maintained buildings close up to the
railroad company's right of way, and, instead of passing
indiscriminately back and forth from the dock property,
the Chappell Company had used the three ways of
access by planked crossings. These crossings were for
its use, and were kept planked by the railroad company.
The Chappell Company was doing an extensive business
in coal and lumber, and its docks were in almost con-
stant use by boats landing there the Chappell Com-
pany's coal and lumber. For at least fifteen years prior
to the accident in question, these crossings had been
quite extensively used by the employees and teams of
the Chappell Company and by other persons and teams
going to and from the docks and boats of the company.
At the intersection of the Lumber Yard Crossing with
Bank Street the Chappell Company maintained gates.
The three crossings across the defendant company's
tracks were equipped with gates by the Chappell Com-
pany, but they were broken so many times by people
crossing back and forth that they were abandoned and
a night watchman put on.

The plaintiff was injured at the Lumber Yard Cross-
ing, by one of the regular passenger-trains of the de-
fendant company. For three years she had lived near
the freight-yard of the defendant west of Shaw's Cove,

and knew that trains were frequently run over the tracks through the Chappell land.   About five o'clock in the afternoon of February 1st, the weather being pleasant, Mrs. Whitney, then aged thirty-six years, in good health, and in the full possession of her faculties, started on foot from a house where she lived west of Shaw's Cove to go to the Union Station.   She walked on the footbridge across Shaw's Cove and reached Sparyard Street, intending to go up Sparyard Street to Bank Street.   Being prevented from going through Sparyard Street, she started up the railroad track intending to reach Bank Street by the use of the railroad tracks and one of the Chappell crossings.   Before she started from Sparyard Street she saw a freight-train coming toward her from the east.   She walked on the north side of the track a distance of about fifty-four feet toward the approaching freight-train, when she crossed over in front of this train and then walked between the east and west bound tracks until she reached the Lumber Yard Crossing at about the same time as did the freight-engine.   She then stepped backward into the yard south of the track at the Lumber Yard Crossing, and waited for the freight-train to pass.

The plaintiff's testimony as to what then occurred is as follows: "Q. Tell the jury what followed.   You were there waiting.   A. When the freight-train got by, I looked both ways, naturally, towards the water first, and I looked towards the depot, and I saw nothing and heard nothing.   I started across, and it seemed the instant I took a step it was like a rush, and I was struck, as if somebody hit me beside the head.  . . .  Q. Where were you standing, Mrs. Whitney, at the time you stated you looked towards the cove and then the other way?   A. Right between the posts; a little back from the posts of the gate."

Mrs. Whitney also said, that she went "three or four

feet, three or four steps," from the place where she was standing when she was struck. She neither saw nor heard the approaching train until she was struck. When the train stopped, Mrs. Whitney was lying between the rail and the fence on the harbor side of the track, about twelve or fifteen feet east of the Lumber Yard Crossing. The engine and about two thirds of the baggage-car had passed her.

The view of the northerly rail of the easterly track at the Lumber Yard Crossing was very limited to the engineer in his cab, as he approached this crossing from the west, on account of the curve in the track, the buildings and the fence. By order of the railroad commissioners no whistle could be sounded on a passenger-train engine approaching from the west within a distance of nearly a mile west of the Lumber Yard Crossing. The bell was ringing when the accident occurred.

The evidence was conflicting as to the speed of the passenger-train just before the accident, but the testimony was not such as to carry conviction to an intelligent or unprejudiced mind that it was excessive or unusual.

*Michael Kenealy* and *Charles B. Whittlesey*, for the appellant (defendant).

*George C. Morgan* and *Allyn L. Brown*, for the appellee (plaintiff).

RORABACK, J. The plaintiff alleges that when she was injured she was rightfully upon the defendant's tracks. To recover she must have established this essential element of her case by a preponderance of the evidence. *Fay* v. *Hartford & Springfield Street Ry. Co.*, 81 Conn. 330, 335, 71 Atl. 364.

There was no testimony tending to show that the

railroad company had ever expressly consented that its property at this place should be used by pedestrians traveling along its tracks. Upon the contrary, it appears that the defendant had posted notices close by, which in unmistakable terms forbade such use of its premises.

The evidence as to the extent, character, and continuance of the use of this crossing was not such that the jury could have reasonably found that the plaintiff, when she was injured, was attempting to cross the railroad tracks under an implied invitation from the railroad company.

The owners of the Chappell land had the right to use this crossing in going to and from their dock property. Every person having business relations with the Chappell Company at this point also had the right to cross the railroad tracks at this place, and the railroad company could not interfere with such use of its property. But the plaintiff was not on the Chappell land or the railroad tracks on business connected with that company or with that of the defendant. She was using the tracks for her own convenience for the purpose of obtaining a shorter path from her home to Bank Street, where she was going.

The fact that the defendant company had planked the crossing at this point had no pertinence as to the question of an implied invitation. The plaintiff, when injured, was not going to or coming from the Chappell's docks, where this crossing ended. She had come from her home and was using the railroad tracks for the purpose of reaching Bank Street. Pedestrians going along the tracks were not invited to use these planks as a crossing, and the defendant was not bound to expect them there. *June* v. *Boston & Albany Railroad*, 153 Mass. 79, 82, 26 N. E. 238.

In order to maintain an action for an injury to per-

son or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty toward the plaintiff, which the defendant had left undischarged or unfulfilled. This is the basis on which the cause of action rests. There can be no fault, or negligence, or breach of duty, where there is no act, or service, or contract, which a party is bound to perform or fulfil. All the cases in the books, in which a party is sought to be charged on the ground that he has caused a way or other place to be incumbered or suffered it to be in a dangerous condition, whereby an accident and injury have been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty or obligation has been violated.

No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter, or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon. *Sweeny* v. *Old Colony & Newport R. Co.*, 92 Mass. (10 Allen) 368, 372, 373.

In *Chenery* v. *Fitchburg R. Co.*, 160 Mass. 211, 35 N. E. 554, where the plaintiff was run down by a train at a private crossing, it was held that he could not recover if a trespasser or mere licensee. In the opinion is the following language (p. 213): "As against a bare licensee, a railroad company has a right to run its trains in the usual way, without special precautions, if the circumstances do not of themselves give warning of his probable presence, and he is not seen until it is too late." In *June* v. *Boston & Albany Railroad*, 153 Mass.

79, 26 N. E. 238, where the deceased, a mere licensee, was run down by a train, it was held that he could not recover. Holmes, J., in giving the opinion of the court, speaks thus (p. 82): "At most he [the plaintiff] was no more than a licensee. As towards him, there was no negligence on the part of the defendant or its servants in not providing a sign-board, gate, or flagman, and there was no duty to whistle, although in fact the engine was whistling. The defendant had a right, as against him, to run its trains upon its tracks at such speed as it found convenient, and it was for the deceased to take care that he was not hurt by their doing so. There may be cases in which even unintended damage done to a licensee, by actively bringing force to bear upon his person, will stand differently from merely passively leaving land in a dangerous condition. But something more must be shown than that trains are run in the usual way upon a railroad, where the place does not of itself give warning of his probable presence, and when he is not seen until it is too late."

There is a marked distinction between the duty which a man owes to persons who come upon his premises as bare volunteers or licensees, and those who come as customers or otherwise, in the course of business, upon the invitation, express or implied, of the occupier. As to the latter, the occupier is bound to exercise reasonable care to prevent damage from unusual danger, of which the occupier has or ought to have knowledge; and this, though the transaction had already been completed, and the plaintiff had returned only for some incidental (if proper and usual) purpose connected with it. As to the former, the party takes his own risk, and, so long as there is no active misconduct toward him, no liability is incurred by the occupier of the premises by reason of injury sustained by a visitor on his premises. *Pomponio* v. *New York, N. H. & H. R.*

*Co.*, 66 Conn. 528, 537, 34 Atl. 491; *Rooney* v. *Woolworth*, 74 Conn. 720, 723, 724, 52 Atl. 411. See also *O'Brien* v. *Union Freight R. Co.*, 209 Mass. 449, 95 N. E. 861, 36 L. R. A. (N. S.) 492, and cases cited in notes upon pages 492 to 503, inclusive; *Neice* v. *Chicago & Alton R. Co.*, 254 Ill. 595, 98 N. E. 989, 41 L. R. A. (N. S.) 162, and cases cited in notes on pages 162 to 167 inclusive.

In our own case of *Nolan* v. *New York, N. H. & H. R. Co.*, 53 Conn. 461, 474, 4 Atl. 106, this court said: "The rate of speed, the arrangement of the tracks, the meeting of trains, and the absence of a fence, are not circumstances which are entitled to much more weight when combined than when taken singly; and so far as they do strengthen each other the same fatal vice attaches, namely, that the supposed duty has for its sole object the protection of wrongdoers, or, at least, of persons who have no excuse for being in the way of passing trains."

Can the plaintiff be permitted to avail herself of the rights belonging to the Chappell Company and to those having business relations with it? May she, although forbidden to do so, enter onto its right of way at any time and place, for her own pleasure or convenience, and claim such protection as a matter of right? Clearly not. If she does so, what duty does the railroad company owe her? Clearly the same duty that any other owner of property would owe her under the same circumstances. How may she be permitted to avail herself of the rights belonging to another, who stands in a different relation to the person against whom the right is asserted, without doing violence to every principle of law upon which reciprocal rights, duties, and obligations are based? *Palmer* v. *Oregon Short Line R. Co.*, 34 Utah, 466, 485, 98 Pac. 689, 16 Amer. & Eng. Ann. Cas. 235.

It is a general rule that a railroad company owes no duty to a person who is unlawfully upon its premises when he is not seen until it is too late to avoid injury. *O'Brien* v. *Union Freight R. Co.*, 209 Mass. 449, 95 N. E. 861; *Chenery* v. *Fitchburg R. Co.*, 160 Mass. 211, 35 N. E. 554; 33 Cyc. 769–771, and cases cited in note 78, p. 771.

There is nothing to show that the engineer of the passenger-train could have stopped the locomotive in time to have avoided the accident after he discovered that the plaintiff was in a perilous position. From Mrs. Whitney's own statements it is apparent that the approaching train must have been within a short distance of her, when, without looking, she stepped in front of the locomotive from behind the post where she was standing to allow the freight-train to pass.

Upon the evidence Mrs. Whitney was not even a licensee, and therefore had no case.

It is true that questions of negligence and contributory negligence are ordinarily questions of fact for the jury, yet when the undisputed evidence is so conclusive as to one of the controlling issues in a case, the question is one of law and not of fact for the jury. *Fay* v. *Hartford & Springfield Street Ry. Co.*, 81 Conn. 330, 338, 71 Atl. 364; *Cottle* v. *New York, N. H. & H. R. Co.*, 82 Conn. 142, 72 Atl. 727; *Elliott* v. *New York, N. H. & H. R. Co.*, 84 Conn. 444, 447, 80 Atl. 283. As the verdict was unsupported by proof of the defendant's negligence, it should have been set aside.

There is error and a new trial is ordered.

In this opinion the other judges concurred.