******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CODY B. HEISINGER *v*. WARD FRANK CLEARY ET AL.
(SC 19633)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued September 21—officially released December 20, 2016*

*Ralph P. Dupont*, with whom, on the brief, was *Barbara J. Dupont*, for the appellant (plaintiff).

*James L. Brawley*, with whom were *Michael R. Keller* and, on the brief, *Cristin E. Sheehan*, for the appellee (named defendant).

*James R. Fogarty*, for the appellee (defendant Ann Heisinger Dillon).

*Opinion*

ROGERS, C. J. This case concerns the standard of care applicable to executors who seek professional advice to value the assets of an estate for the purpose of preparing state and federal estate tax returns. The plaintiff, Cody B. Heisinger, appeals[1] from the trial court's rendering of summary judgment in favor of the defendants, Ward Frank Cleary and Ann Heisinger Dillon, after the plaintiff failed to produce an expert witness on standard of care in his action alleging that the defendants had breached their fiduciary duties by overvaluing an estate asset. The plaintiff claims that the trial court improperly concluded that an expert was required and that, on the undisputed facts, the court instead should have rendered summary judgment, as to liability, in his favor. We agree that an expert witness was unnecessary but conclude, nevertheless, that the trial court properly rendered summary judgment in the defendants' favor because the undisputed facts demonstrated conclusively that they could not be held liable for any errors allegedly committed by the professionals they had selected and retained. Accordingly, we affirm the judgment of the trial court.[2]

The following undisputed facts and procedural history are relevant to the appeal. The plaintiff is the son of Frank B. Heisinger (decedent), who died testate on November 9, 2007. The plaintiff is the decedent's sole heir and the only beneficiary of a trust established under the decedent's will. Pursuant to the terms of that will, the defendants are coexecutors of the decedent's estate. Dillon is the decedent's sister, and Cleary is an attorney with the law firm of Curtis, Brinckerhoff & Barrett, P.C., which serves as counsel for the estate and for many years had provided various legal services to the decedent and his family members. In addition to an extensive enumerated list of specific powers, the decedent's will, which was executed on November 21, 2005, granted the defendants, as the estate's executors, "all powers conferred on executors and trustees under the Connecticut Fiduciar[y] Powers Act [General Statutes § 45a-233 et seq.], as amended, as the same exists on . . . the date of the execution of [the] [w]ill and all powers conferred upon executors . . . wherever [they] may act." Among the specific powers enumerated in the will was "to employ attorneys, accountants and other persons for services or advice."

Prior to the events in question, Dillon had no prior experience acting as a fiduciary. Following the decedent's death, she met with Cleary, who informed her that the estate's most valuable asset was shares of stock in the F.A. Bartlett Tree Expert Company (Bartlett), a closely held corporation established by the decedent's grandfather, and that the stock needed to be valued, for estate tax purposes, as of the date of the decedent's death. Neither Cleary nor Dillon possessed any training

or expertise in the valuation of corporate stock. Approximately five years prior to the decedent's death, a trial court adjudicating the dissolution of the decedent's marriage, relying on an appraisal that valued the Bartlett stock as of September 30, 2001,[3] had found that the stock was worth "approximately $2,120,000."[4] About two months before the decedent's death, the Bartlett stock had been valued, for business purposes and with the decedent's awareness, by Management Planning, Inc. (Management), at $4,071,600. Pursuant to Cleary's recommendation,[5] and with Dillon's agreement, the estate hired Management for the purpose of valuing the stock as of the date of the decedent's death. Management has more than seventy years of experience in preparing valuations of corporate stock for the purposes of, inter alia, estate tax return preparation. In deposition testimony, the plaintiff agreed that the defendants had a responsibility to get a date of death appraisal from a qualified appraisal firm and that Management was such a firm.

In July, 2008, Management provided the defendants with an appraisal report that concluded that the value of the Bartlett stock as of November 9, 2007, was $4,862,820.[6] The increase in the value of the stock from its previous valuation was attributed to new information regarding the earnings of Bartlett in the third quarter of 2007. The July, 2008 appraisal report was signed by three members of Management's professional staff[7] and contained a certification that it was prepared in conformity with various professional standards for appraisers. That same month, Cleary provided a complete copy of the appraisal report to the plaintiff. In November, 2008, Cleary sent draft copies of tax documents using the Management valuation to an attorney who represented the plaintiff at that time. In early 2009, the defendants filed state and federal tax returns for the estate using the Management valuation. From 2008 through 2011, neither the plaintiff nor any of the three attorneys who represented him during this period ever informed either of the defendants that they believed that the Bartlett stock had been overvalued, provided the defendants with an alternative appraisal, or requested that an additional appraisal be conducted. In 2011, the estate satisfied its Connecticut tax liability after its counsel negotiated a substantial reduction in that liability on the basis that the estate possessed insufficient liquid assets to pay the entire amount due. For similar reasons, the estate's payment of federal taxes was deferred until 2013, when the estate sold some of the stock back to Bartlett at the per share price included in Management's July, 2008 appraisal report.

In August, 2012, the plaintiff brought this action against the defendants alleging "maladministration" of the estate. In the operative complaint, the plaintiff averred that the defendants had breached their fiduciary duties as executors of the decedent's estate by

"grossly overvaluing" the Bartlett stock.[8] According to the complaint, Management's valuation of $4,862,820 as of the date of the decedent's death was approximately $3 million too high,[9] which in turn had resulted in an excessive assessment of estate taxes. More specifically, the complaint alleged that the defendants had breached their fiduciary duties by failing: to cause a correct assessment and payment of estate taxes; to supervise properly the work of others; and to amend the purportedly erroneous estate tax returns in a timely fashion. It averred further that, because of the illiquidity of the estate's assets, the plaintiff had been exposed to the potential for personal liability for the taxes. As to the standard of care, the plaintiff alleged that the defendants had a duty to manage the decedent's estate "with the care and skill of a prudent business person in the management of his or her own business affairs," knowing that the stock was closely held and unmarketable, and constituted a large percentage of the estate's assets.

In answering the plaintiff's complaint, the defendants denied that they had breached their fiduciary duties. Additionally, they each advanced a number of special defenses, including that of reasonable reliance. Specifically, the defendants averred that they had engaged Management, a reputable company experienced in valuing corporate stock, for purposes of valuing the Bartlett stock, and that they reasonably had relied on the appraisal provided by Management when they filed the estate's federal and state tax returns.

In January, 2015, after substantial discovery had taken place, both defendants moved for summary judgment arguing, inter alia, that the plaintiff had failed to produce an expert who would testify as to the relevant standard of care for a fiduciary acting under the particular circumstances.[10] They contended further that the plaintiff had produced no evidence that either of the defendants, by relying on the Management appraisal report, had committed an act constituting a breach of fiduciary duties, which, in the defendants' view, necessarily contemplates acts of fraud, self-dealing, conflict of interest or something similar.

The plaintiff objected to the defendants' motions and responded with his own motion for partial summary judgment, requesting that the court render judgment in his favor as to both defendants' liability. The plaintiff contended, inter alia, that expert testimony was unnecessary to prove a claim of breach of fiduciary duty and that breaches of fiduciary duty are not limited to instances of intentional wrongdoing, but rather, can include more passive behaviors such as "benign neglect," "simple neglect" or " 'blind . . . unreasonable reliance.' " In the plaintiff's view, a jury could conclude, without the assistance of an expert, that the 2001 appraisal of the Bartlett stock in connection with the decedent's divorce proceedings, which employed a

larger discount rate and resulted in a substantially lower valuation, should have raised a "red flag" for the defendants once they received the higher valuation from Management in 2008, and that their failure to seek an additional valuation, given the existence of this "red flag" and their general familiarity with Bartlett, was a breach of their fiduciary duties. Moreover, the plaintiff claimed, the defendants should have sought to amend the estate's tax returns on the basis of this knowledge, because the estate possessed insufficient liquid assets to pay the taxes calculated pursuant to the Management valuation, and the defendants subsequently were able to obtain a reduction in the estate's state tax liability.

On March 16, 2015, the trial court granted the defendants' motions for summary judgment. The court disagreed with the defendants that claims of breach of fiduciary duty necessarily were limited to instances of intentional wrongdoing such as fraud, self-dealing or conflict of interest, and, therefore, it denied summary judgment on this basis. It agreed, however, that expert testimony was required to establish the applicable standard of care and to assist the jury in evaluating the defendants' actions, namely, their acceptance and use of Management's appraisal report in light of the facts and circumstances known to them at the time, in view of that standard. Specifically, in the court's estimation, expert testimony was necessary to help the jury understand stock valuation concepts, the requirements and procedures of taxing authorities, and the types of decision-making necessary in the administration of a sizeable estate and trust. The trial court concluded that the plaintiff's failure to produce such expert testimony was fatal to his claims and, therefore, rendered summary judgment in favor of the defendants. This appeal followed.

In his initial brief to this court, the plaintiff claimed that the trial court improperly rendered summary judgment in favor of the defendants because expert testimony was unnecessary and the undisputed facts showed, instead, that the plaintiff was entitled to summary judgment. Specifically, he contended that a lay standard of care applied to his claims and that a jury was capable of comprehending the particular breaches alleged. Moreover, according to the plaintiff, the undisputed facts showed definitively that the defendants had breached their fiduciary duties by accepting and continuing to rely on the Management valuation.[11]

In response, both defendants contended that there is no evidence in the record showing that they committed any breach of fiduciary duty, regardless of whether they are correct that that cause of action contemplates fraud, self-dealing, conflict of interest or other similar behavior, or instead, whether something less egregious like blind neglect would suffice. Cleary argued additionally that the trial court correctly determined that expert

testimony on the applicable standard of care was necessary because the issues in this case were beyond the comprehension of a lay juror.

Following oral argument before this court, we ordered the parties to submit supplemental briefs addressing the following question: "Does General Statutes § 45a-234 (19) provide the applicable standard of care for the fiduciary defendants under the facts of this case and, if so, how does it impact the resolution of the motion for summary judgment on appeal?" In response, the plaintiff argued, inter alia, that the statute cannot aid the defendants because they did not meet the standard of care recited therein. The defendants, for their part, agreed that the statutory standard applies and contended that, on the undisputed evidence, it shields them from liability, making summary judgment in their favor proper.

We agree with the plaintiff that he was not required to produce an expert on standard of care, nor was he required to prove that the defendants had a conflict of interest or had engaged in fraud, self-dealing, or other similar behavior. This is because, given the particular allegations of breach of fiduciary duty at issue in this case, the requisite standard of care applicable to the defendants is supplied by § 45a-234 (19), and further, that standard is akin to an ordinary negligence standard that a lay jury is competent to apply without the assistance of an expert. We conclude, nevertheless, that summary judgment in favor of the defendants remains proper[12] because the undisputed evidence established, as a matter of law, that the defendants are immune from liability pursuant to § 45a-234 (19).[13]

"The standard of review of a trial court's decision to grant summary judgment is well established. [W]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 792, 749 A.2d 1114 (2000). Moreover, "[s]ummary judgment in favor of a defendant is proper when expert testimony is necessary to prove an essential element of the plaintiff's case and the plaintiff is unable to produce an expert witness to provide such testimony." *Bozelko* v. *Papastavros*, 323 Conn. 275, 282, A.3d (2016). This court's review of the trial court's decision to grant summary judgment in favor of the defendants is plenary. Id.

As we previously have explained herein, the decedent's will granted the defendants, as its executors, "all powers conferred on executors and trustees under the

Connecticut Fiduciar[y] Powers Act . . . ." General Statutes § 45a-236 provides in relevant part that "[s]ections 45a-233 to 45a-236, inclusive, shall be known as the 'Fiduciary Powers Act,'" and that "[a]ny unqualified reference thereto by name or words of similar import shall be deemed to include all the powers listed in section 45a-234, at the time of signing the will or trust instrument . . . ." Among the powers enumerated in § 45a-234 (19) is the power "[t]*o employ and compensate persons deemed by the fiduciary needful to advise or assist in the proper settlement of the estate* or administration of any trust *including*, but not limited to: Servants, agents, accountants, brokers, attorneys-at-law, attorneys-in-fact, real estate managers, rental agents, realtors, *appraisers*, and investment counsel, custodians and other professional advisors as reasonably may be required or desired in managing, protecting and investing the estate or any trusts *without liability for any neglect, omission, misconduct, or default of such person provided such person was selected and retained with due care on the part of the fiduciary. . . .*" (Emphasis added.)

Pursuant to the plain language of § 45a-234 (19), an executor cannot be held liable for problems arising from the work of a professional, such as an appraiser, that the executor has hired to assist with the settlement of an estate, as long as the executor "selected and retained [that professional] with due care . . . ." The phrase "due care," as typically used in the law, connotes an ordinary negligence standard. See *Steinhaus* v. *Steinhaus*, 145 Conn. 95, 97, 139 A.2d 55 (1958) ("[f]ailure to exercise due care is negligence"). When applying a due or reasonable care standard, a jury considers whether the defendant has exercised "the care [that] a reasonably prudent person would use under the circumstances." (Internal quotation marks omitted.) *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 776, 83 A.3d 576 (2014); see also *Steinhaus* v. *Steinhaus*, supra, 97 (due care is that exercised by "the ordinarily prudent person under the circumstances"); Black's Law Dictionary (6th Ed. 1990) p. 499 ("Due care" is defined as "[j]ust, proper, and sufficient care, so far as the circumstances demand; the absence of negligence. . . . That care which an ordinarily prudent person would have exercised under the same or similar circumstances. . . . Due care, reasonable care, and ordinary care are often used as convertible terms." [Citation omitted; internal quotation marks omitted.]). The applicable standard, therefore, contemplates the actions of an ordinary person, and not those of a professional with a specialized skill set.[14] This is consistent with the fact that, to serve as an executor or administrator, a person need not necessarily possess any special skills or expertise.[15] See General Statutes §§ 45a-290 (a) and 45a-303 (c) (1); see also *Farmers' Loan & Trust Co. of New York* v. *Smith*, 74 Conn. 625, 626–27, 51 A. 609 (1902)

(Probate Court cannot reject chosen executor unless selected individual is within class of persons excluded by statute or common law); *Smith's Appeal from Probate*, 61 Conn. 420, 426, 24 A. 273 (1892) (under common law, "all persons might be appointed as executors who were mentally capable of executing the duties of the trust, or, as it is otherwise stated, who were capable of making a will, or were not specially disqualified"; accordingly, lack of experience in business affairs is not disqualifying circumstance).

We conclude, therefore, that expert testimony is not necessary to assist a jury in its determination of whether a fiduciary has exercised due care in the circumstances contemplated by § 45a-234 (19).[16] In short, to determine whether a fiduciary has exercised "due care" in selecting and retaining a professional to assist in fulfilling the responsibilities associated with a trust or an estate, a jury need not possess an informed understanding of the technical aspects of the work product or services provided by that professional. In fact, the necessity of hiring an expert typically will arise from the fiduciary *lacking* such an understanding. Rather, the jury is charged with determining whether a reasonably prudent person in the circumstances of the fiduciary, knowing only what he or she knew or should have known at the relevant times, would have appreciated that the selection and retention of the professional at issue could cause harm to the trust or estate. When, as here, the fiduciary possesses no expertise in regard to the task that the professional was hired to perform, he or she should not be held liable under § 45a-234 (19) unless there was a deficiency in the professional's qualifications or integrity that would be obvious to an ordinary person, existing at the time the professional was selected and retained.

The plaintiff's allegations of breach of fiduciary against the defendants all stem from their use, for estate tax return purposes, of the purportedly erroneous valuation of the Bartlett stock that had been prepared by Management and, therefore, fall squarely within the purview of § 45a-234 (19).[17] The defendants, therefore, cannot be held liable for any damages flowing from the alleged overvaluation unless they failed to exercise due care in selecting and retaining Management. More specifically, the plaintiff needed to show that there were deficiencies with Management's qualifications or integrity that no reasonable person, having ordinary knowledge, would have disregarded. Because this was a determination that could be made without the assistance of an expert, the trial court improperly granted summary judgment for the defendants on the basis that the plaintiff had not produced an expert on standard of care. We conclude, however, on the undisputed facts, that a fair and reasonable jury could not have found that the defendants failed to exercise the care that an ordinarily prudent person would have exercised under

all of the attendant circumstances. Consequently, the trial court's rendering of summary judgment in favor of the defendants was proper nevertheless.[18]

The Internal Revenue Service requires, and the parties do not dispute, that for estate tax purposes, the value of property owned by a decedent is to be determined at the time of his or her death. See 26 U.S.C. § 2031 (a); 26 C.F.R. § 20.2031–1 (b). In the case of stock lacking a readily discernible market value, that agency's regulations direct the preparer of an estate tax return, when valuing the stock, to consider an extensive list of factors and to submit "[c]omplete financial and other data upon which the valuation is based . . . including copies of reports of any examinations of the company made by accountants, engineers, or any technical experts as of or near the applicable valuation date." 26 C.F.R. § 20.2031–2 (f). The substantial undervaluing of property in an estate can lead to the imposition of significant financial penalties. 26 U.S.C. § 6662 (a), (g) and (h). Unquestionably, therefore, the defendants were required to seek an updated valuation of the estate's Bartlett stock from a professional appraiser that was experienced in valuing closely held stock for estate tax purposes. In selecting and retaining Management, which by all appearances is a well regarded company with extensive experience in performing that very function, to conduct the date of death valuation, the defendants most assuredly exercised due care. Indeed, Management only recently had valued the Bartlett stock for the company's business purposes, with no apparent objection to the results from the decedent. In fact, the plaintiff conceded, during discovery, that the defendants were required to obtain a current valuation of Bartlett and that Management possessed the requisite qualifications to undertake that valuation. There have never been any allegations that the professionals in Management's employ, who produced the valuation at issue, lack integrity.

The plaintiff now contends, in his supplemental brief, that the defendants did not truly "select" Management because, instead of independently choosing their own appraiser, they used Management, the same company that Bartlett recently had hired to conduct a similar appraisal. He claims alternatively that the defendants did not exercise "due care" in selecting Management because they did not also consult with the appraiser who had valued the decedent's stock in connection with his divorce proceedings in 2001. We disagree with each of these contentions. An interpretation of the statutory language that would disallow the selection of a professional on the basis advanced by the plaintiff, which is wholly unrelated to the professional's qualifications or integrity, would be absurd. Similarly, requiring a fiduciary to hire a particular, additional professional, when there is no indication that the chosen professional is deficient in any way, would be an unduly restrictive

construction of the statutory standard of due care.

The plaintiff also contends that, once the defendants received Management's appraisal report, certain "red flags" should have alerted them that the valuation contained in the report was erroneous and required them to amend the estate's federal estate tax return. We disagree. Section 45a-234 (19) absolves a fiduciary of responsibility for issues that arise regarding a professional's work if that professional was selected and retained with due care. Once that standard is met, the fiduciary has no further responsibility to second-guess the work provided by the professional.

We conclude, in sum, that the undisputed evidence shows that the defendants exercised due care in selecting and retaining Management as their appraiser. Accordingly, § 45a-234 (19) shields the defendants from liability for any damages resulting from the allegedly improper valuation in Management's July, 2008 appraisal report. Summary judgment in their favor therefore was proper.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The plaintiff claims additionally that the trial court improperly refused to recognize a fiduciary exception to the attorney-client and work product privileges, thereby shielding certain documents from being disclosed to him during discovery. We have reviewed the documents in question, which were submitted to the trial court for an in camera review, and conclude that they do not contain information material to the issue raised in this case. We decline, therefore, to address the plaintiff's additional claim.

[3] The appraisal as of September 30, 2001, was commissioned by the decedent's former wife. The resulting appraisal report provides that the analysis therein was conducted only for the purpose of valuing the marital estate in connection with the dissolution proceedings. It provides further that the report "should not be used for any other purpose" and that the opinion as to value "would most likely be different if another valuation date were used." In a section discussing assumptions and limiting conditions, the report reiterates that "[t]he various estimates of value presented [herein] apply to this valuation only and may not be used out of the context presented herein."

[4] To account for the stock's lack of marketability, the appraisers who conducted the 2001 valuation applied a discount rate of 60 percent.

[5] In his deposition, Cleary testified that he was aware that Management had worked on the earlier appraisal for Bartlett and that he "knew that [Management] was good . . . ."

[6] To account for the stock's lack of marketability, Management's appraisers applied a discount rate of 35 percent.

[7] The most highly ranked individual who signed the report was a senior vice president of Management who possessed a master's degree in business administration from the Wharton School of the University of Pennsylvania, had more than one decade of experience in valuation, and had appeared as an expert witness in the United States Tax Court and in other proceedings.

[8] The operative complaint contains allegations that arguably can be read to assert additional causes of action, such as professional negligence in regard to Cleary. After Dillon filed a request to revise the complaint on the basis that it alleged three causes of action under a single count, the plaintiff filed an objection clarifying that he was alleging a single count of breach of fiduciary duty against both defendants.

[9] This allegation apparently was based on the September 30, 2001 valuation, which was $2,742,820 less than Management's November 9, 2007 valuation.

[10] Dillon's January, 2015 motion for summary judgment was a renewal of

a similar motion she had filed in July, 2013, which the trial court, *Adams, J.*, had denied without prejudice to later renewal. The court denied the July, 2013 motion on the basis of an appraisal report, submitted by the plaintiff on December 2, 2013, that included a preliminary opinion as to the value of the Bartlett stock on November 9, 2007. An updated version of that report, dated December 15, 2014, set the stock's value at $1,935,000.

Prior to producing the aforementioned reports well after litigation had commenced, the plaintiff did not provide to the defendants any other alternative valuation of the Bartlett stock as of the date of the decedent's death. The defendants vigorously contested the accuracy of the plaintiff's after-the-fact appraisal and the qualifications of the individual who had conducted it.

[11] The plaintiff argued additionally that, when a fiduciary relationship exists, the burden should be on the fiduciary to prove that he or she dealt fairly with the beneficiary, and furthermore, that the defendants bore the burden of establishing their special defense of reasonable reliance. We disagree that this case involves the type of circumstances under which we have held that the burden shifts to a fiduciary to prove fair dealing, because there are no allegations that the defendants personally have benefited in any way from the complained of actions. See *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 457, 844 A.2d 836 (2004) (limiting burden shifting framework to claims involving fraud, self-dealing or conflict of interest); *Murphy* v. *Wakelee*, 247 Conn. 396, 399, 721 A.2d 1181 (1998) (same). Additionally, although we agree that the burden of proving a special defense rests with the party alleging it; see *DuBose* v. *Carabetta*, 161 Conn. 254, 262, 287 A.2d 357 (1971); see also 1 R. Bollier et al., Stephenson's Connecticut Civil Procedure (3d Ed. 1997) § 83 (e), pp. 246–47; the defendants here did not move for summary judgment on the basis of any of their special defenses, but rather, because of the lack of evidentiary support for the allegations of the plaintiff's complaint.

[12] "Where the trial court reaches a correct decision but on [alternative] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . [W]e . . . may affirm the court's judgment on a dispositive [alternative] ground for which there is support in the trial court record." (Citation omitted; internal quotation marks omitted.) *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 794, 749 A.2d 1144 (2000); id., 794–95 (affirming summary judgment in favor of defendants on alternative ground).

[13] Because we conclude that § 45a-234 (19) is dispositive of the particular issue before us, we need not decide whether, under other circumstances, conduct that falls short of fraud, self-dealing or conflict of interest may form the basis of a claim for breach of fiduciary duty, nor need we decide under what circumstances expert testimony might be necessary to prove a breach of fiduciary duty.

[14] At oral argument, the plaintiff disclaimed any contention that a different standard of care applied to Cleary because he was an attorney. As we previously have indicated, Cleary possessed no expertise in the valuation of corporate stock.

[15] Rather, in the case of an executor, the chief qualification is the testator's trust in the individual or individuals chosen. As we previously have observed, "[n]omination of a person to act as his executor by one making his will imports . . . trust and confidence in the particular person so named. Such nominations with respect to natural persons as [a] matter of common knowledge are inserted in a will because the one executing the will reposes special reliance upon the individual integrity, sagacity, capacity, good faith, friendliness and sympathy with testamentary wishes on the part of the specified person." (Internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 460 n.15, 844 A.2d 836 (2004).

[16] In certain cases, "[e]xpert testimony . . . serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard. . . . Expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors. . . . Typical cases where expert testimony is required are those that are akin to allegations of professional negligence or malpractice." (Citation omitted; internal quotation marks omitted.) *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 374, 119 A.3d 462 (2015).

[17] We disagree with the plaintiff that § 45a-234 (19) is inapplicable in the present case because Cleary was the scrivener of the decedent's will and there was no proof that the decedent was fully informed of the implications of the statutory exculpation provision. The statute contains no prohibitions

or extra requirements in this regard, and we will not read any into it. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 316 Conn. 790, 803, 114 A.3d 1181 (2015).

We further reject the plaintiff's arguments, raised in his supplemental brief, that permitting the defendants to prevail on appeal on the basis of § 45a-234 (19) is unfair because he did not conduct discovery with reference to the statute and because the defendants did not plead it as a special defense. The plaintiff has claimed throughout the proceedings that a lay, prudent person standard applied, thereby obviating the need for expert testimony as to the standard of care, and that he properly could prevail on allegations akin to negligence. Specifically, he challenged the defendants' conduct in supervising the work of Management and obtaining an assessment of taxes on the basis of Management's valuation, claiming that they failed to act prudently as the circumstances required. Accordingly, it is difficult to conceive of how the plaintiff would have conducted discovery differently had he proceeded explicitly pursuant to § 45a-234 (19). In any event, it was the plaintiff's responsibility to identify the statutory provision that clearly governed his claims, and he cannot avoid its application by neglecting to do so, nor can he be heard to complain of any resulting unfairness. Additionally, the defendants, to date, consistently have denied the plaintiff's allegation that Management overvalued the Bartlett stock. It cannot be said, therefore, that § 45a-234 (19) is being applied as a special defense. See Practice Book § 10-50.

[18] Although the application of the standard of care to the particular facts of a case ordinarily is a question of fact, it "becomes a question of law . . . when the mind of a fair and reasonable person could reach but one conclusion." *Smith* v. *Leuthner*, 156 Conn. 422, 424–25, 242 A.2d 728 (1968); see also *Rawls* v. *Progressive Northern Ins. Co.*, supra, 310 Conn. 775–76 (same standard for directed verdict in negligence action); *Whitney* v. *New York, New Haven & Hartford Railroad Co.*, 87 Conn. 623, 633, 89 A. 269 (1914) (although negligence ordinarily presents factual questions, "when the undisputed evidence is so conclusive as to one of the controlling issues in a case, the question is one of law and not of fact for the jury."); cf. *Abrahams* v. *Young & Rubicam, Inc.*, 240 Conn. 300, 307, 692 A.2d 709 (1997) (although causation normally is question reserved for fact finder, "the issue becomes one of law when the mind of a fair and reasonable person could reach only one conclusion," warranting summary judgment for defendants [internal quotation marks omitted]).

———————————————————