******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HARTFORD FIRE INSURANCE COMPANY *v.*
# MODA, LLC, ET AL.
## (SC 20678)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Alexander, Js.

*Syllabus*

The plaintiff insurance company sought a judgment declaring that it was not obligated to cover certain business losses suffered by the defendants, related companies that sell footwear to retailers throughout the country, during the COVID-19 pandemic. Prior to the pandemic, the defendants purchased two insurance policies from the plaintiff, a package policy that covered specified premises and business personal property, and a marine policy that covered the defendants' inventories while in transit and storage. The package policy specifically provided coverage for "direct physical loss of or direct physical damage to . . . [c]overed [p]roperty" caused by or resulting from a covered cause of loss. It also included a provision obligating the plaintiff to pay for the loss of business income incurred by the defendant from "the necessary interruption of . . . business operations" and an exclusion for loss or damage caused by the presence, growth, proliferation, or spread of a virus. The marine policy, which was controlled by New York law pursuant to its choice of law provision, likewise insured "against all risks of direct physical loss or direct physical damage to" insured property, subject to specific exclusions. As a result of various governmental orders temporarily closing nonessential businesses at the beginning of the COVID-19 pandemic, the defendants' retail customers cancelled orders, causing the defendants' warehouses to overflow with inventories, which, due to the seasonal nature of the retail business, became effectively unsellable. After the plaintiff commenced the present action, the defendants filed a counterclaim, alleging, inter alia, breach of the package and marine policies and breach of the implied covenant of good faith and fair dealing. The plaintiff thereafter moved for summary judgment on the complaint and the counterclaim, arguing that neither the package policy nor the marine policy covered the claimed business losses because the defendants had not suffered a "direct physical loss of or direct physical damage to" insured property. Alternatively, the plaintiff claimed that the claimed losses were subject to the package policy's virus exclusion. In opposing summary judgment, the defendants claimed to have suffered three forms of direct physical loss of or damage to property, namely, contamination of their property, loss of use of their property, and loss of value of their inventories. The trial court concluded that neither policy provided coverage. The court reasoned, with respect to the package policy, that the defendants' losses were subject to the virus exclusion and, therefore, exempted from coverage. With respect to the marine policy, the trial court reasoned that, under New York law, the words "direct" and "physical" in an insurance policy limited coverage obligations to physical damage to the property itself and, therefore, that the defendants' claims regarding the loss of use of and access to their property were unavailing. Finding no allegations in the counterclaim or evidence in the record that the defendants' shoes had somehow been infected with the coronavirus, the trial court also rejected the defendants' contamination claim. Accordingly, the trial court granted the plaintiff's motion for summary judgment and rendered judgment for the plaintiff on its claim and on the defendants' counterclaim, and the defendants appealed.

*Held* that the defendants' claimed business losses were not covered under either the package policy or the marine policy, and, accordingly, this court affirmed the trial court's judgment:

1. The defendants failed to establish a genuine issue of material fact as to whether they suffered a covered loss under the package policy, and, because the defendants' businesses losses were not covered by that policy, this court did not need to address whether those losses were subject to the policy's virus exclusion:

The defendants' claim that the package policy provided coverage for the loss of the value and use of their insured property when retailers were forced to close during the pandemic was resolved in the companion case of *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.* (346 Conn. 33), in which this court interpreted a policy with almost identical language and held that, under Connecticut law, the plain meaning of the phrase "direct physical loss of . . . property" did not include the suspension of business operations on a physically unaltered property in order to prevent the transmission of the coronavirus, as the ordinary usage of that phrase clearly and unambiguously required some physical, tangible alteration to or deprivation of the property that renders it physically unusable or inaccessible.

Moreover, with respect to the defendants' claim that their property sustained direct physical damage because it was contaminated with the coronavirus, the defendants did not explain how the alleged contamination contributed to their business losses, and, as this court explained in *Connecticut Dermatology Group, PC*, even if the defendants could prove that their property was contaminated with the coronavirus, that was not sufficient to establish that the property was physically lost or damaged within the meaning of the provisions of the package policy.

2. The trial court correctly concluded that, under New York law, the marine policy plainly and unambiguously did not cover the defendants' claimed business losses:

New York courts consistently have held that language providing coverage only for "direct physical loss or direct physical damage," like that in the marine policy, does not describe business income losses incurred as a result of COVID-19 related closures when the insured property itself was not alleged or shown to have sustained direct physical loss or physical damage, and there was no reason to disregard the substantial body of precedent, uniformly followed by New York courts and federal courts applying New York law, interpreting "direct physical loss" to require some fault in the physical substance of the insured property.

3. In deciding in favor of the plaintiff on the defendants' counterclaim, the trial court reasoned that, because the plaintiff had properly denied the defendants' insurance claims, the defendants' counterclaim failed as a matter of law, and the defendants did not ask this court to question that reasoning on appeal.

Argued September 15, 2022—officially released January 27, 2023*

*Procedural History*

Action for a judgment declaring that the plaintiff is not obligated to provide coverage under certain insurance policies for the defendants' alleged business losses as a result of the COVID-19 pandemic, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the defendants filed a counterclaim; thereafter, the case was transferred to the judicial district of Waterbury, Complex Litigation Docket, where the court, *Bellis, J.*, granted the plaintiff's motion for summary judgment and rendered judgment thereon, from which the defendants appealed. *Affirmed.*

*Christine A. Montenegro*, pro hac vice, with whom were *Tony Miodonka* and, on the brief, *Joshua A. Siegel* and *Jerold Oshinsky*, pro hac vice, for the appellants (defendants).

*Jonathan M. Freiman*, with whom were *Anjali S. Dalai*, pro hac vice, and, on the brief, *Mark K. Ostrowski*, *Sarah E. Dlugoszewski*, *Sarah D. Gordon*, pro hac vice, *James E. Rocap III*, pro hac vice, and *Johanna Dennehy*, pro hac vice, for the appellee (plaintiff).

*Brian E. Spears* and *John N. Ellison,* pro hac vice, filed a brief for United Policyholders as amicus curiae.

*Wystan M. Ackerman* and *Denis J. O'Malley* filed a brief for the American Property Casualty Insurance Association as amicus curiae.

*Opinion*

ECKER, J. This is one of two cases decided today in which we must determine whether business losses suffered during the COVID-19 pandemic are covered by insurance for "direct physical loss of or direct physical damage to . . . [p]roperty . . . ." See *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, 346 Conn. 33,    A.3d    (2023) (*Connecticut Dermatology*). The plaintiff is Hartford Fire Insurance Company (Hartford Fire). Before the pandemic, Hartford Fire sold two insurance policies to the defendants, Moda, LLC, and its affiliates (collectively, Fisher).[1] The parties brought their claim and counterclaim to determine whether those policies provide coverage for losses suffered by Fisher during the pandemic. We agree with the trial court that Fisher's losses are not covered by the relevant policies, and we therefore affirm the granting of summary judgment in favor of Hartford Fire.

The record reflects the following facts. Fisher sells shoes to department stores and other retailers across the country. In the first months of 2020, disaster struck at Fisher, as it did around the world, in the form of the COVID-19 pandemic. To slow the spread of the SARS-CoV-2 virus, state governments issued orders temporarily closing all nonessential businesses. Fisher's "major retail customers . . . shuttered their storefronts [and] canceled . . . orders, placed months prior, from [Fisher's] spring lines." (Internal quotation marks omitted.) As a result, Fisher's warehouses "overflow[ed] with spring inventory, which, due to the seasonal nature of the retail business, [was] effectively unsellable." (Internal quotation marks omitted.) Fisher alleged that it has "suffered immense financial injuries" and may "have no choice but to liquidate" unless its losses are insured. (Internal quotation marks omitted.)

Before the pandemic, Fisher purchased two insurance policies from Hartford Fire, which were in effect from October, 2019, to October, 2020: (1) a multi-flex business policy (package policy), and (2) an ocean marine policy (marine policy). The package policy covers "direct physical loss of or direct physical damage to . . . [c]overed [p]roperty caused by or resulting from a [c]overed [c]ause of [l]oss." The policy defines a "[c]overed [cause] of [l]oss" as "direct physical loss or direct physical damage that occurs during the [p]olicy [p]eriod and in the [c]overage [t]erritory unless the loss or damage is excluded or limited [by the] policy." Covered property includes specified premises and "[b]usiness [p]ersonal [p]roperty," such as "[s]tock."

In addition to property loss or damage, the package policy covers the loss of business income incurred (1) "due to the necessary interruption of . . . business operations during the [p]eriod of [r]estoration due to direct physical loss of or direct physical damage to

property caused by or resulting from a [c]overed [c]ause of [l]oss at [s]cheduled [p]remises";[2] (2) "when access to . . . '[s]cheduled [p]remises' is specifically prohibited by order of a civil authority as the direct result of a [c]overed [c]ause of [l]oss to property in the immediate area of [the] '[s]cheduled [p]remises' "; and (3) in the event of an "interruption of . . . business operations . . . due to loss or damage to property caused by . . . [a] virus," if the virus "is the result of" a "[s]pecified [c]ause of [l]oss," which is defined to include "aircraft or vehicles . . . ." (Internal quotation marks omitted.)

Excluded from the package policy's coverage, however, is any "loss or damage caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of . . . [a] virus." This virus exclusion is subject to an exception for loss or damage caused by a " '[s]pecified [c]ause of [l]oss,' " which includes "aircraft or vehicles . . . ."

The marine policy that Fisher purchased from Hartford Fire protects Fisher's shoes while they are in transit and storage. It "insures against all risks of direct physical loss or direct physical damage to [i]nsured [p]roperty from any external cause," subject to specific exclusions. "Insured [p]roperty" includes Fisher's "shoes and related accessories."

Hartford Fire initiated this action seeking a judgment declaring that Fisher's losses are not covered by the package policy.[3] Fisher filed an answer and counterclaim, alleging (1) breach of the package and marine insurance policies, (2) breach of the implied covenant of good faith and fair dealing, and (3) violation of the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq., via the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., by, among other things, "refusing to pay claims without conducting a reasonable investigation based [on] all available information" and "failing to promptly settle claims, [when] liability has become reasonably clear . . . ."

Hartford Fire moved for summary judgment on its declaratory judgment complaint and Fisher's counterclaim, arguing that neither the package policy nor the marine policy covered Fisher's losses because Fisher had not suffered a "direct physical loss of or direct physical damage to" property. (Internal quotation marks omitted.) Alternatively, Hartford Fire claimed that the virus exclusion in the package policy "expressly exclude[s] coverage for any loss or damage caused by a virus, and [Fisher's] COVID-19 related business losses were caused by the . . . coronavirus . . . ." Fisher opposed Hartford Fire's motion for summary judgment, contending that it had suffered "three distinct forms of direct physical loss of or damage to property: contamination of its property, loss of use of its property, and loss of value of its inventory." (Emphasis omitted; internal

quotation marks omitted.) Fisher further argued that the virus exclusion in the package policy was inapplicable because its business losses were not caused by the COVID-19 virus but, rather, by the "business interruption caused by orders of civil authority used to control a pandemic . . . ."

The trial court concluded that there was no coverage under either policy. With respect to the package policy, the court reasoned that Fisher's losses were exempted from coverage by the virus exclusion because "[t]here [could] be no doubt that the cause of [Fisher's] damages [was] the [SARS-CoV-2] virus . . . ." With respect to the marine policy, the court reasoned that, "under New York law, the words 'direct' and 'physical' in an insurance policy limit an insurance company's coverage obligations to physical damage to the property itself." Fisher therefore could not "succeed on [its argument that it was] entitled to coverage based on loss of access to the property and the fact that [its] inventory became outdated or diminished in value." The court rejected Fisher's argument that its property had been " 'contaminated' " on the ground that "there [were] no allegations in the counterclaim or evidence in the record indicating that [its] shoes [had] somehow been infected with the . . . virus." Having determined that "the language of both the package policy and the marine policy clearly and unambiguously [did] not cover [Fisher's] alleged losses," the trial court concluded that Harford was "entitled to summary judgment" on its claim and Fisher's counterclaim. This appeal followed.[4]

Our review of a trial court's interpretation of an insurance contract is de novo; e.g., *National Grange Mutual Ins. Co.* v. *Santaniello*, 290 Conn. 81, 88, 961 A.2d 387 (2009); as is our review of a trial court's decision to grant summary judgment. E.g., *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 415, 195 A.3d 664 (2018). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. E.g., *Heisinger* v. *Cleary*, 323 Conn. 765, 776, 150 A.3d 1136 (2016). Summary judgment is appropriate if "there [is] no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Id.; see Practice Book § 17-49.

I

THE PACKAGE POLICY

It is well established that "any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Internal quotation marks omitted.) *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, 311 Conn. 29, 38, 84 A.3d 1167 (2014).[5] However, we "will not torture words to import ambiguity . . . ." (Internal

quotation marks omitted.) Id. "If the terms of the policy are clear and unambiguous, then the language . . . must be accorded its natural and ordinary meaning." (Internal quotation marks omitted.) Id.

Coverage under the package policy is limited to cases of "direct physical loss of or direct physical damage to . . . [p]roperty . . . ." In the companion case that we decide today, *Connecticut Dermatology*, we interpreted a policy with almost identical language. See *Connecticut Dermatology, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 36–37. We held that "the plain meaning of the term 'direct physical loss of . . . [p]roperty' does not include the suspension of business operations on a physically unaltered property in order to prevent the transmission of the coronavirus. Rather, in ordinary usage, the phrase 'physical loss of . . . [p]roperty' clearly and unambiguously means that there must be some physical, tangible alteration to or deprivation of the property that renders it physically unusable or inaccessible." Id., 51. Mere loss of use or access is not enough, unless that loss is caused by a physical alteration of the property or the physical removal of the property.[6] See id., 53–58. There is no need to repeat that reasoning here.

Our holding in *Connecticut Dermatology* resolves most of the issues raised by Fisher with respect to the package policy. Fisher's main claim is that it lost the value and use of its insured property when stores were forced to close during the pandemic. That claim fails as a matter of law because the losses Fisher suffered did not result from any tangible physical alteration to Fisher's stock or real property. Rather, those losses resulted from "a transformation in governmental and societal expectations and behavior that had a seriously negative impact on [Fisher's] businesses." Id., 52. The plain language of the package policy does not provide coverage for such losses.

Fisher claims, without elaboration, that its property suffered direct physical damage because it was contaminated with the SARS-CoV-2 virus. It points to testimony in the record that "persons infected with or carrying [the virus] were present at Fisher's facilities . . . ." This testimony, Fischer claims, raises "an issue of fact [as to] whether Fisher's shoes themselves were contaminated . . . ."

Fisher has not explained how this alleged contamination contributed to its business losses. Fisher has not argued or provided evidence that it spent money to decontaminate its shoes or that the shoes could not be sold, or would need to be sold for less, because they were contaminated. Fisher claims that the shoes became "effectively unsellable" because they went out of season, not because they were contaminated. Moreover, as we explained in *Connecticut Dermatology*, "the virus is not the type of physical contaminant that creates the

risk of a direct physical loss because, once a contaminated surface is cleaned or simply left alone for a few days, it no longer poses any physical threat to occupants." *Connecticut Dermatology Group, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 59. Contamination with the SARS-CoV-2 virus, even if it could be proved, is not sufficient to establish that the shoes were physically lost or damaged within the meaning of the package policy.[7]

For these reasons, Fisher has failed to establish a genuine issue of material fact as to whether it suffered a covered loss under the package policy. As Fisher's business losses are not covered by the package policy, we do not need to address whether those losses are excluded from coverage by the virus exclusion contained in that policy.[8]

## II

### THE MARINE POLICY

We next address whether Fisher's losses are covered by the marine policy. Our interpretation of that policy is governed by New York law.[9] In New York, as in Connecticut, "[i]f the terms of a policy are ambiguous . . . any ambiguity must be construed in favor of the insured and against the insurer . . . ." (Citations omitted; internal quotation marks omitted.) *Antoine* v. *New York*, 56 App. Div. 3d 583, 584, 868 N.Y.S.2d 688 (2008). However, "[when] the contract is unambiguous on its face, it should be construed as a matter of law and summary judgment is appropriate . . . ." (Citations omitted.) *Niagara Frontier Transit Metro System, Inc.* v. *Erie*, 212 App. Div. 2d 1027, 1027, 623 N.Y.S.2d 33 (1995).

The marine policy, like the package policy, provides coverage only for "direct physical loss or direct physical damage to [i]nsured [p]roperty . . . ." New York precedent leads us to the same conclusion with respect to the marine policy that we reached under Connecticut law with respect to the policies at issue in *Connecticut Dermatology* and in part I of this opinion. New York courts consistently have held that such language does not describe business income losses incurred as a result of COVID-19 related closures "[when] the insured property itself was not alleged or shown to have suffered direct physical loss or physical damage." *10012 Holdings, Inc.* v. *Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 221 (2d Cir. 2021).

In *Roundabout Theatre Co.* v. *Continental Casualty Co.*, 302 App. Div. 2d 1, 2, 751 N.Y.S.2d 4 (2002), the court considered whether a theater was insured against the loss it suffered when a street closure prevented customers from reaching its doors. The theater's insurance covered "all risks of direct physical loss or damage to the [insured's] property . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 3. The court held

that "[t]he plain meaning of the words 'direct' and 'physical' narrow[ed] the scope of coverage and mandate[d] the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy . . . ." (Citations omitted.) Id., 7. In other words, the theatergoers' inability to reach the theater because of the street closure did not constitute direct physical loss or damage to the theater. See id., 7–10.

This precedent has been uniformly followed by New York courts and federal courts applying New York law. See, e.g., *Visconti Bus Service, LLC* v. *Utica National Ins. Group*, 71 Misc. 3d 516, 523, 142 N.Y.S.3d 903 (2021) ("[t]he words 'direct' and 'physical' narrow the scope of coverage to physical damage to the property itself and foreclose [the] argument that the phrase 'loss of' includes mere 'loss of use of' the property"); see also, e.g., *Newman Myers Kreines Gross Harris, P.C.* v. *Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("[t]he words 'direct' and 'physical' . . . ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves"). Hartford Fire claims "that *every* New York court addressing the issue—both state and federal—has held that property insurance policies like [the one at issue] do not cover losses sustained from [COVID-19] and related government[al] orders"; (emphasis in original; footnotes omitted); and Fisher has not provided any authority to contradict Hartford Fire's claim. See, e.g., *Island Gastroenterology Consultants, PC* v. *General Casualty Co. of Wisconsin*, Docket No. 604318-21, 2021 WL 3852967, *2 (N.Y. Sup. August 25, 2021) (decision without published opinion, 72 Misc. 3d 1221(A), 150 N.Y.S.3d 898 (2021)) ("the loss of use of premises due to COVID-19 related government[al] orders does not trigger business-income coverage based on physical loss to property"); *Mangia Restaurant Corp.* v. *Utica First Ins. Co.*, 72 Misc. 3d 408, 414, 148 N.Y.S.3d 606 (2021) ("[s]ince the appearance of the COVID-19 pandemic, courts have continued to posit that actual physical damage is required before business interruption insurance coverage is paid").

Fisher asks us to disregard these cases and, instead, to apply the reasoning employed by the Appellate Division of the New York Supreme Court in a different context in *Pepsico, Inc.* v. *Winterthur International America Ins. Co.*, 24 App. Div. 3d 743, 806 N.Y.S.2d 709 (2005). That case involved insurance coverage for losses caused by " 'off-tasting' soft drink products . . . resulting from faulty raw ingredients . . . ." (Citation omitted.) Id., 743. The court concluded that the plaintiff could prove the drinks were " 'physically damaged' " without showing that they "ha[d] gone from good to bad." Id., 744. In other words, the court reasoned that the drinks could be " 'physically damaged' " simply by being made from faulty ingredients and suffering a loss

in market value as a result. Id.

Fisher points to the court's statement in *Pepsico, Inc.*, that "[i]t is sufficient . . . that the product's function and value ha[d] been seriously impaired, such that the product [could not] be sold . . . ." (Citations omitted.) Id. In context, however, that statement merely reinforces the court's conclusion that the presence of faulty raw ingredients could be a "physical event" that " 'physically damaged' " the products.[10] Id. There does not appear to have been any doubt in *Pepsico, Inc.*, that the drinks contained faulty ingredients. Thus, the holding in *Pepsico, Inc.*, does not contradict the substantial body of New York precedent interpreting "direct physical loss or direct physical damage to [i]nsured [p]roperty" to require some fault in the physical substance of the insured property. We therefore agree with the trial court that the marine policy plainly and unambiguously does not cover Fisher's losses.[11]

### III

### CONCLUSION

Fisher's losses plainly and unambiguously are not covered by either the package policy or the marine policy. The trial court was therefore correct to render summary judgment on Hartford Fire's claim for declaratory relief.[12] The only remaining issue is the status of Fisher's counterclaim. The trial court reasoned that, because Hartford Fire had properly denied Fisher's insurance claims, Fisher's counterclaim must fail as a matter of law. Fisher has not asked us to question that reasoning. Thus, having decided that Fisher's losses are plainly and unambiguously not covered by the policies, we affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other justices concurred.

* January 27, 2023, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The defendants are Moda, LLC; Marc Fisher, LLC; Fisher International, LLC; MB Fisher, LLC; Fisher Footwear, LLC; MFKK, LLC; Unisa Fisher Wholesale, LLC; Fisher Licensing, LLC; Fisher Accessories, LLC; Fisher Sigerson Morrison, LLC; MBF Holdings, LLC (DE); Marc Fisher Holdings, LLC; Fisher Services, LLC; MBF Air, LLC; Unisa Fisher, LLC; MBF Licensing, LLC; MBF Invest, LLC; MBF Holdings, LLC (WY); Fisher Design, LLC; Marc Fisher Jr. Brand, LLC; Marc Fisher International, LLC; MF-TFC, LLC; Easy Spirit, LLC; MFF-NW, LLC; and MFF NW Investment, LLC.

[2] "Period of [r]estoration" is defined as "the period of time that: (1) [b]egins at the time the [c]overed [c]ause of [l]oss occurred; and (2) [e]nds on the earlier of: (a) [t]he date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (b) [t]he date when business is resumed at a new permanent location."

[3] Fisher first raised the coverage dispute relating to the marine policy as part of its counterclaim. Hartford Fire subsequently moved for summary judgment on the ground that there was no coverage under either policy.

[4] Fisher appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] The parties appear to agree that the package policy is governed by Connecticut law.

[6] For example, property that has been stolen or lost at sea may not be physically altered but has been physically removed from the owner's posses-

sion and rendered physically inaccessible. It is undisputed that Fisher's property was not lost, stolen, or rendered physically inaccessible.

[7] For the same reason, Fisher cannot establish direct physical loss or damage to premises other than its own. Two provisions of Fisher's business income coverage apply if there is direct physical loss or damage to other premises. First, the package policy provides "[d]ependent [p]roperties" coverage for lost business income if there is direct physical loss or damage at premises on which Fisher depends to "[d]eliver materials or services . . . [to] [a]ccept . . . [or] [m]anufacture products . . . [or to] [a]ttract customers . . . ." Second, "[c]ivil [a]uthority" coverage applies to lost business income if civil authority orders are issued in response to direct physical loss or damage at premises "in the immediate area" of Fisher's insured premises.

Fisher has not offered sufficient evidence to show that its dependent properties, or properties in Fisher's immediate area, suffered the kind of physical alteration that would constitute direct physical loss or damage under the package policy. Although nonessential businesses were forced to close during the pandemic, the evidence in the record suggests that these closures were preventative measures to prevent the spread of the SARS-CoV-2 virus. As we explained in detail in *Connecticut Dermatology*, the mere fact that proximity to an infected person while inside a building might be dangerous does not qualify as a risk of direct physical loss or damage to that building. See *Connecticut Dermatology, PC* v. *Twin City Fire Ins. Co.*, supra, 346 Conn. 52. These preventative measures do not, therefore, constitute a covered cause of loss under the package policy.

In addition, we note that Fisher has coverage for losses of business income caused by a virus. This coverage is limited to viruses that are caused by a "specified cause of loss . . . ." (Internal quotation marks omitted.) We have considered Fisher's arguments and agree with the trial court that the SARS-CoV-2 virus was not a specified cause of loss, as defined in the package policy.

[8] For the same reason, we do not need to consider Fisher's claim that Hartford Fire should be estopped from relying on the virus exclusion.

[9] The choice of law provision in the marine policy directs us to apply federal maritime law or, in the absence of federal maritime law, the law of New York. The United States Supreme Court has declined to create a federal common law to govern maritime insurance contracts and, instead, has "[left] the regulation of marine insurance . . . [to] the [s]tates." *Wilburn Boat Co.* v. *Fireman's Fund Ins. Co.*, 348 U.S. 310, 321, 75 S. Ct. 368, 99 L. Ed. 337 (1955). Fisher nevertheless attempts to persuade us that federal maritime common law applies. It points us to only one case, *Northwestern Selecta, Inc.* v. *Guardian Ins. Co.*, 541 F. Supp. 3d 206 (D.P.R. 2021), in which the United States District Court for the District of Puerto Rico concluded that *Wilburn Boat Co.* was inapplicable because "the Puerto Rico legislature exclude[d] marine insurance contracts from the Insurance Code . . . ." Id., 211. Neither party in this case argues that there is no New York law for us to apply, and we see no grounds for pursuing the logic followed in *Northwestern Selecta, Inc.* We have considered Fisher's other choice of law arguments and find them similarly unconvincing.

[10] The court in *Pepsico, Inc.* v. *Winterthur International America Ins. Co.*, supra, 24 App. Div. 3d 744, relied on five cases, all of which involved physically contaminated products. See *National Union Fire Ins. Co. of Pittsburgh, P.A.* v. *Terra Industries, Inc.*, 216 F. Supp. 2d 899, 901 (N.D. Iowa 2002) (benzene contamination in carbon dioxide product), aff'd, 346 F.3d 1160 (8th Cir. 2003), cert. denied, 541 U.S. 939, 124 S. Ct. 1697, 158 L. Ed. 2d 360 (2004); *Zurich American Ins. Co.* v. *Cutrale Citrus Juices USA, Inc.*, Docket No. 5:00-CV-149-OC-10GRJ, 2002 WL 1433728, *1 (M.D. Fla. February 11, 2002) (juice adulterated with foreign substance); *Pillsbury Co.* v. *Underwriters at Lloyd's, London*, 705 F. Supp. 1396, 1397–98 (D. Minn. 1989) (use of cans with "tin free steel . . . ends" when processing cans of cream-style corn "result[ed] in [the] underprocessing of the product"); *Shade Foods, Inc.* v. *Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 862, 93 Cal. Rptr. 2d 364 (2000) (presence of wood splinters in diced roasted almonds); *General Mills, Inc.* v. *Gold Medal Ins. Co.*, 622 N.W.2d 147, 150 (Minn. App. 2001) (traces of unapproved chemical in oats), review denied, Minnesota Supreme Court (October 17, 2001), and review denied, Minnesota Supreme Court (April 17, 2001).

[11] We have considered Fisher's other arguments relating to the marine policy and find them unconvincing. Fisher's allegation that its shoes were contaminated with the SARS-CoV-2 virus is not enough to establish coverage under the marine policy for the same reason that it fails to establish coverage under the package policy. See part I of this opinion; see also *Mangia Restau-*

*rant Corp.* v. *Utica First Ins. Co.*, supra, 72 Misc. 3d 415 ("[e]ven had there been proof that the virus physically attached to the property . . . that would not have constituted the direct, physical loss or damage required to trigger the policy coverage, because such presence can be eliminated by routine cleaning and disinfecting" (internal quotation marks omitted)).

We also reject Fisher's argument that it did not need to prove direct physical loss or damage for coverage under the marine policy's "Ocean Cargo Choice Coverage Form." Fisher contend that, "when [§§] 19 and 25 [of the Ocean Cargo Choice Coverage Form] are read together, it is clear that coverage under [§] 25 can be triggered by showing the 'frustration, interruption or termination of the insured voyage,' with no requirement of a risk of direct physical loss or damage," because § 19 specifies that direct physical loss or damage only is required "[u]nless otherwise specified . . . ." Section 25 provides coverage for "all landing, warehousing, transshipping, forwarding and other expenses incurred . . . should same be incurred by reason of a risk insured against . . . ." Risks insured against are described in § 19 of the Ocean Cargo Choice Coverage Form. That section provides that, "[u]nless otherwise specified . . . this policy insures against all risks of direct physical loss or direct physical damage to [i]nsured [p]roperty . . . ." Fisher argues that, because § 19 applies only "[u]nless otherwise specified," it does not apply to § 25. We disagree.

Read as generously as reasonably possible in favor of the insured, § 19 applies to the subsequent sections unless they explicitly or implicitly specify otherwise. There is nothing in the language of § 25 to suggest that § 19 does not apply. In fact—although Fisher fails to mention it—the coverage provided by § 25 is expressly limited to expenses "incurred by reason of a risk insured against." That language is a clear reference back to the policy's definition of "a risk insured against," which is found in § 19. There is simply no basis in the text for Fisher's argument that § 25 rejects or modifies the definition of a risk insured against offered by § 19.

[12] Because there is no ambiguity in either the package or the marine policy, we need not address Fisher's claim that additional discovery is necessary to clarify alleged ambiguities in the policy provisions.

———————————————